.Vol. 49]      SEPTEMBER TERM, 1896.      869

Moline, Milburn & Stoddard Co. v. Wood Mowing & Reaping Machine Co.

49  869
51  167
54  582

MOLINE, MILBURN & STODDARD COMPANY V. WALTER A. WOOD MOWING & REAPING MACHINE COMPANY.

FILED DECEMBER 16, 1896.   No. 6864.

1. **Reference:** AUTHORITY OF REFEREE: TRIAL: ESTOPPEL. A party who appears before a referee at the time fixed for trial and treats the order of reference as embracing all the issues of the case, and requests findings upon all controverted questions, will not, upon the coming in of the report, be permitted to assail the findings on the ground that they are unauthorized by the order of reference.

2. **Lien of Bailee:** POSSESSION. Exclusive possession of chattels by the claimant, whether a factor, warehouseman, or other bailee, is indispensable to the existence or continuance of a lien thereon at common law, or the usage of trade.

3. ——: ——. A lien does not exist at common law, or by custom, in favor of one who holds property in subordination to the will or control of another.

4. ——: ——. A lien does not attach in favor of a bailee of goods if inconsistent with the terms of the agreement, express or implied, under which his possession was obtained.

5. ——: CONTRACTS FOR STORAGE. A contract for the storage and forwarding of goods by which the consignor reserves the right to withdraw, at pleasure, for reshipment the goods stored thereunder, and by which each party reserves the right to draw at sight upon the other for any balance in his favor, the consignee relying upon the personal credit of the consignor, does not create in favor of such consignee a lien for charges pursuant thereto.

ERROR from the district court of Douglas county. Tried below before AMBROSE, J.

The opinion contains a statement of the case.

*James H. McIntosh*, for plaintiff in error:

By failure to terminate the contract by giving thirty days' notice, and by the acts of the parties thereto on and subsequent to December 1, 1891, the contract was renewed for the year 1892, and was in full force and effect at the commencement of this action. (*Brady v. Flint*, 23 Neb., 785; *Yates v. Kinney*, 19 Neb., 275; *Schuyler v. Smith*,

51 N. Y., 309; *Critchfield v. Remaley*, 21 Neb., 178; *Laughran v. Smith*, 75 N. Y., 205; *Haynes v. Aldrich*, 133 N. Y., 287; *Providence County Savings Bank v. Hall*, 16 R. I., 154; *Coomler v. Hefner*, 86 Ind., 108; *Bollenbacker v. Fritts*, 98 Ind., 50; *Harry v. Harry*, 127 Ind., 91; *Smith v. Bell*, 44 Minn., 524; *Zippar v. Reppy*, 15 Colo., 260; *Wolffe v. Wolff*, 69 Ala., 549; *Adams v. Fitzpatrick*, 125 N. Y., 124; *Wallace v. Devlin*, 36 Hun [N. Y.], 275; *Vail v. Jersey Little Falls Mfg. Co.*, 32 Barb. [N. Y.], 564; *Tatterson v. Suffolk Mfg. Co.*, 106 Mass., 56; *Grover v. Bulkley*, 48 Ill., 189; *Moline Plow Co. v. Booth*, 17 Ill. App., 574; *Alba v. Moriarty*, 36 La. Ann., 680; *Towne v. Grand Portage Copper Co.*, 55 Mich., 147; *Standard Oil Co. v. Gilbert*, 84 Ga., 714.)

Defendant below had a right to retain the possession of the goods in controversy herein until the balance due it under said contract was paid. (1 Parsons, Contracts [8th ed.], 96, 146; *Garside v. Trent & Mersey Navigation*, 4 Term Rep. [Eng.], 581; *Barron v. Eldredge*, 100 Mass., 455; Edwards, Bailment [2d ed.], 243; *Stevens v. Biller*, 25 Ch. Div. [Eng.], 31; *Stevens v. Robins*, 12 Mass., 179; *Matthews v. Menedger*, 2 McLean [U. S.], 145; Mechem, Agency, sec. 1032; *Naylor v. Mangles*, 1 Esp. [Eng.], 109; *Moet v. Pickering*, 8 Ch. Div. [Eng.], 372; *Lowe v. Martin*, 18 Ill., 286; *Deveren v. Fleming*, 53 Fed. Rep., 401; *Stallman v. Kimberly*, 121 N. Y., 393; *Schmidt v. Blood*, 9 Wend. [N. Y.], 267; *Steinman v. Wilkins*, 7 W. & S. [Pa.], 466; *Morgan v. Congdon*, 4 N. Y., 552.)

The parties recognized the existence of defendant's lien until late in the trial. It is therefore too late for plaintiff to dispute defendant's right to the lien. (*Nunn v. Home Ins. Co.*, 31 Neb., 39; *Ohio & M. R. Co. v. McCarthy*, 96 U. S., 267; *School District v. Estes*, 13 Neb., 52; *Harbach v. Miller*, 14 Neb., 9; *Rathbun v. McConnell*, 27 Neb., 239.)

If this lien existed, defendant was, at the commencement of suit, entitled to possession of the goods, unless the tender which the plaintiff claims to have made divested the lien. (*Tompkins v. Batie*, 11 Neb., 147; *Mc-*

*Pherson v. Wiswell,* 16 Neb., 625; *Knox v. Williams,* 24 Neb., 630; *Joyce v. Whitney,* 57 Ind., 550.)

The referee had no jurisdiction to pass upon questions outside of those embraced in the order of reference. (Code, sec. 298; *Mills v. Miller,* 3 Neb., 94; *Lamaster v. Scofield,* 5 Neb., 148; *Kinkaid v. Hiatt,* 24 Neb., 562; *Grim v. Norris,* 19 Cal., 140; *Smith v. Pollock,* 2 Cal., 92; *Robinson v. O'Conner,* 12 Neb., 405; *Littlefield v. Waterhouse,* 83 Me., 307; *Henderson v. Huey,* 45 Ala., 275; *Delong v. Stahl,* 13 Kan., 559; *Brondberg v. Babbott,* 14 Neb., 517; *Blin v. Campbell,* 14 Johns. [N. Y.], 432; *Hoagland v. Creed,* 81 Ill., 506; *Bishop v. Nelson,* 83 Ill., 601; *Meredeth v. People,* 84 Ill., 479; *Gordon v. Hobart,* 2 Story [U. S.], 243; *Bell v. Sampey,* 80 Ala., 372; *Dudley v. Farris,* 79 Ala., 187.)

*E. T. Farnsworth* and *Wharton & Baird, contra.*

References as to renewal of contract: *Capps v. Adams County,* 27 Neb., 360; *Cooper v. Chittenden,* 33 Neb., 313; *Lapp v. Ryan,* 23 Mo. App., 436; *Belch v. Belch,* 32 Mo. App., 387.

References as to defendant's right to a lien: *Fieldings v. Mills,* 2 Bos. [N. Y.], 489; *Wiles Laundering Co. v. Hahlo,* 105 N. Y., 234; *Chase v. Westmore,* 5 M. & S. [Eng.], 180; *Cowell v. Simpson,* 16 Ves. [Eng.], 276; *Bass v. Upton,* 1 Minn., 292; *Farguson v. Winslow,* 34 Minn., 384; *Coit v. Waples,* 1 Minn., 134; *Stoddard Mfg. Co. v. Huntly,* 8 N. H., 441; *Chandler v. Belden,* 18 Johns. [N. Y.], 157; *Cummings v. Harris,* 3 Vt., 244; *Stickney v. Allen,* 76 Mass., 352; *Stillings v. Gibson,* 63 N. H., 1; *Union Slate Co. v. Tilton,* 73 Me., 207.

In reply to the contention that plaintiff below had recognized defendant's lien reference was made to the following cases: *McCullough v. Hellweg,* 66 Md., 269; *Hoxsie v. The Reuben Doud,* 46 Fed. Rep., 803; *Macky v. Dillinger,* 73 Pa. St., 86; *Hayes v. Campbell,* 63 Cal., 143; *Adams v. Clark,* 9 Cush. [Mass.], 215; *Staat v. Evans,* 35 Ill., 456; *Chinn v. Bretches,* 42 Kan., 316; *Carlson v. Beckman,* 35 Neb., 395; *Mattocks v. Young,* 66 Me., 459.

Defendant having submitted the disputed questions to the referee, is estopped from denying the authority of the referee to pass upon those questions. (*Baird v. City of New York*, 74 N. Y., 382; *Quinn v. Lloyd*, 7 Rob. [N. Y.], 157; *Porter v. Parmly*, 6 J. & S. [N. Y.], 490; *McShane v. Gray*, 13 Ia., 504; *Hewitt v. Egbert*, 34 Ia., 485; *Armstrong v. Percy*, 5 Wend. [N. Y.], 536; *Bloore v. Potter*, 9 Wend. [N. Y.], 480; *Cowenhoven v. Ball*, 118 N. Y., 231; *Vose v. Cockroft*, 44 N. Y., 415; *Waterman v. Connecticut & P. R. R. Co.*, 30 Vt., 610; *Burt v. Oneida Community*, 33 N. E. Rep. [N. Y.], 307; *Taylor v. First Congregational Church*, 34 N. E. Rep. [Ind.], 655; *Hatch v. Watkins*, 1 Martin, n. s. [La.], 154; *Hosford v. Stone*, 6 Neb., 378; *Shain v. Peterson*, 33 Pac. Rep. [Cal.], 1085; *Huffman v. Beever*, 69 Hun [N. Y.], 557.)

POST, C. J.

This was an action of replevin in the district court for Douglas county by the Walter A. Wood Mowing & Reaping Machine Company, a corporation (hereafter called the "plaintiff"), against the Moline, Milburn & Stoddard Company (hereafter called the "defendant") to recover possession of certain farm machinery and extras and attachments thereto, together with a quantity of binding twine, of the alleged value of $28,626.50, and which was, as claimed, wrongfully detained by the defendant. An answer was filed alleging that on the 1st day of October, 1888, the parties hereto entered into a written contract, to which reference will hereafter be made, whereby the defendant agreed to receive all goods of the character described in the petition which might be consigned to it by the plaintiff, to store said goods in its warehouse in the city of Omaha, and to reship the same upon the order of the plaintiff, on terms therein specified; that said agreement had been renewed from year to year and was in full force and effect at the time of the commencement of the action; that pursuant thereto the defendant company received from the plaintiff large quantities of

machinery, binding twine, etc., including the property described in the petition, and which, with the exception of the property so described, has been sold or reshipped by order of the plaintiff; that a settlement was had between the parties, of the storage account, at the close of the year 1891, showing a balance in favor of the defendant under said contract of $3,482.09, which is still due and owing to it, and that there is due from the plaintiff in addition thereto, as charges for storing the property in controversy, the further sum of $2,571.55. The defendant was, it is alleged, entitled to the possession of the property in controversy at the time of the commencement of the action, by virtue of a lien thereon to the amount of its charges as aforesaid, in the aggregate sum of $6,053.64. It also claims damage for the wrongful detention of said property by the plaintiff in the sum of $5,000. There was a reply admitting the execution of the agreement set out and the receipt by the defendant of the property in controversy thereunder, but denying that said agreement was renewed, as charged, for the year 1892, or subsequent years. It is admitted therein that there was a settlement in 1891 of the storage account for that year, by which a balance was shown in plaintiff's favor of $3,482.09. It is, however, alleged that there was at the same time a settlement of the plaintiff's account for goods unaccounted for in the years 1890 and 1891, showing a balance in its favor of $581.89. The issues thus joined were, by agreement of parties, submitted to a referee "for an accounting of the amount due the defendant, and of the amount of goods, if any, not taken by the sheriff, * * * and the value thereof, and to report his findings," etc. The referee subsequently submitted his findings and conclusions of law, which, so far as material in our view of the questions presented, are as follows:

"That on October 1, 1888, the Walter A. Wood Mowing & Reaping Machine Company, plaintiff herein, and the Moline, Milburn & Stoddard Company, defendant herein,

entered into and executed in writing a contract in words and figures following, to-wit:

" 'This contract and agreement, entered into this 1st day of October, A. D. 1888, by and between Moline, Milburn & Stoddard Company, a corporation organized under the laws of the state of Ohio, and doing business at Omaha, Nebraska, and Des Moines, Iowa, party of the first part, and Walter A. Wood Mowing & Reaping Company, of Hoosick Falls, New York, and St. Louis, state of Missouri, party of the second part, witnesseth:

" 'The party of the first part agrees to receive all goods of the different kinds mentioned in this contract which may be consigned to them by the said party of the second part and store same in their warehouse, and to reship any such goods, or parts of same, on orders of said party of the second part or their authorized agents, at the following prices, viz.: * * * Party of the second part agrees to furnish one competent man to assist in shipping extras from July 1 to September 1, 1889, free of charge to party of first part; also agrees to allow party of the first part a commission of 33 1-3 per cent on list price of extras for all sold for cash, shipped C. O. D., or sold on their own account. * * * The said party of the first part agrees to pay freight on all goods consigned to them under the contract by the party of the second part, on arrival of same in Omaha, Nebraska, the party of the second part agreeing to remit same in New York or St. Louis exchange, payable to the order of Moline, Milburn & Stoddard Company, immediately upon receipt of expense in bill of same. All goods and repairs to be delivered at the warehouse of Moline, Milburn & Stoddard Company in Omaha, Nebraska, by the party of the second part (and any charges for drayage or extra handling that may occur by inability to get cars on Moline, Milburn & Stoddard Company's switch, caused by labor troubles or strikes, to be paid by said party of the second part). * * * The said party of first part agrees, where practicable, when so requested by the said

party of the second part, to collect as advance charges their charges for transfer, together with such amounts as the party of the second part requests, said advance charges to be credited to the said party of the second part. The said party of the first part agrees to make statement of account to said party of the second part on the 1st of September, or later, or at any time requested, and to remit any amount due said party of the second part at such time, and in case a balance is due Moline, Milburn & Stoddard Company, the said party of the second part agrees to remit same promptly on receipt of statement. The party of the first part reserves the right to make sight drafts on said party of the second part at any time for any balance which may be due for any freight, storage, or transfer charges, said draft to be accompanied by a statement of the same, and the said party of the second part hereby agrees to promptly honor any and all such drafts.

" 'The said party of the second part agrees to transfer all their goods for supplying their trade tributary to Omaha, Nebraska, except car loads, from Hoosick Falls or St. Louis, direct to local agents only, through Moline, Milburn & Stoddard Company, during the term of this agreement. All orders for reshipment to be clear and definite as to goods wanted, and the said party of the first part reserves the right to promptly return any incomplete orders for further explanation before filling the same, and are not to be held responsible for any losses or damages that may arise from such action. The said party of the second part agrees to carry in store with said party of the first part a sufficient quantity of such repairs as may be needed by their patrons; any orders for repairs not in store are to be repeated to the said party of the second part for direct shipment to the party ordering the same. On all such repeated orders for repairs the said party of the first part is to receive 10 per cent on list price at time of settlement. All goods in store with the said party of the first part are to be carried

at the risk of the party of the second part as to fire and the action of the elements.  *  *  *  The said party of the second part agrees to pay all freight, drayage, and charges on any goods which may be returned by their agents, and also agrees to pay the said party of the first part full transfer charge for receiving and handling same.

" 'Either party may, by giving thirty days' notice in writing to the other party, cancel this contract.  In case this contract is not renewed at its termination, party of the first part agrees to transfer all machines and extras at one-third of the regular transfer charges as designated in this contract.' "

"That in pursuance and fulfillment of said contract the plaintiff shipped to the defendant goods of the different kinds mentioned in said contract, and the defendant received and stored the same, and reshipped said goods as requested by the plaintiff as provided by said contract.  *  *  *

"7. That the plaintiff did not ship goods to the defendant or transact any business with the defendant after December 1, 1891, and the defendant did not reship any goods belonging to the plaintiff after said date upon any order or instruction from the plaintiff.  There was no attempt, by letter, indorsement, or otherwise, on the part of the plaintiff or defendant to renew or extend the contract for any period after December 1, 1891.

"8. That on December 18, 1891, a settlement was had between the plaintiff and the defendant of the business transactions had under said contract for the year 1891, and it was agreed by and between the plaintiff and the defendant that there was at that time due and owing to the defendant, of and from the plaintiff, the sum of $3,495.79 for and on account of goods received, stored, and transferred under said contract for the year 1891 and down to December 1, 1891.  This settlement did not take into consideration and include certain extras short in the year 1890, amounting to $380.22, and the extras short in 1891, amounting to $165.67; that upon the extras

short in 1890 the defendant was entitled to a commission
of 33 1-3 per cent, amounting to $126.74; that upon the
extras short in the year 1891 the defendant was entitled
to a commission of 33 1-3 per cent, amounting to $55.22;
that on the 18th day of December, 1891, the defendant
was entitled to credits as follows:

| | | |
|---|---:|---:|
| Amount of the settlement for 1891 | $3,495 79 | |
| Commission on extras short in 1890 | 126 74 | |
| Commission on extras short in 1891 | 55 22 | |
| | | $3,677 75 |

"And defendant should be charged with—

| | | |
|---|---:|---:|
| Extras in 1890 | $380 22 | |
| Extras short in 1891 | 165 67 | |
| | | 545 89 |

| | |
|---|---:|
| Balance | $3,131 86 |

"There was due to the defendant from the plaintiff on
the 18th day of December, 1891, the sum of $3,131.86, and
is the entire amount now due to the defendant from the
plaintiff, with interest at seven per cent from December
18, 1891.

"9. That at the time of the commencement of this ac-
tion the plaintiff was entitled to the possession of the
goods which had been received by the defendants of the
plaintiff and by the defendant stored under said contract.

"10. That one-third of the transfer charges upon the
goods held by the defendant under said contract was the
sum of $856.68.

"11. The defendant did not transfer the goods to the
plaintiff.

"12. That on the 2d day of February, 1892, the plaintiff
herein offered to the defendant a certified check for the
sum of $3,952.54, being the amount then admitted by the
defendant to be due from the plaintiff to the defendant,
including one-third transfer charges, namely, the sum of
$856.68.

"13. That on the said 2d day of February, 1892, and on previous occasions, the plaintiff, through its agents, demanded from the defendant the goods herein replevied. The defendant refused to transfer or deliver the goods to the plaintiff.

"14. That the sheriff of Douglas county, Nebraska, by virtue of the writ of replevin issued herein, took from the defendant all the goods held by the defendant belonging to the plaintiff.

"15. That the goods taken herein by the sheriff were all the goods received by the defendant of and from the plaintiff under the contract aforesaid, except such goods as had been shipped or transferred by the defendant at the request of the plaintiff to various parties, and duly settled and accounted for in the settlement of 1891 and in the account showing extras short in 1890 and extras short in 1891.

"FINDINGS OF LAW.

"1. That the contract between the plaintiff and defendant was renewed by the parties hereto for the year 1890, and was again extended by the parties for one year from December 1, 1890, and that it terminated on the 1st day of December, 1891.

"2. That the clause in said contract relative to the transfer of goods at the termination thereof was renewed with the contract for the year 1890, and was again renewed and extended by the parties for one year from December 1, 1890, and was in full force and effect at the termination of the contract on December 1, 1891, and the defendant would have been entitled to one-third transfer charges if the transfer had been made.

"3. That the plaintiff, on the 2d day of February, 1892, made a lawful tender to the defendant of $3,952.54.

"Respectfully submitted, this 28th day of October, 1893.

"CHAS. E. CLAPP, *Referee.*"

To the foregoing report exceptions were interposed, as was also a motion for a new trial, which were in turn overruled, whereupon the court found that the right of

possession of the property in controversy was in the plaintiff at the time the action was commenced, and that it was entitled to damage for wrongful detention thereof in the sum of $0.05, for which judgment was awarded, and which has, by means of the petition in error of the unsuccessful party, been removed into this court for review.

We will first notice the last proposition argued by counsel, viz., that the findings of the referee are broader than the order of submission, and therefore void for want of jurisdiction. The district court, in disposing of that objection, found that "the defendant, by requesting findings upon all the questions of fact and law involved in said litigation, is now estopped to call in question the jurisdiction of the referee." It is quite apparent from an inspection of the record that the duty of the referee to pass upon all questions material to the controversy was not only conceded by both parties at the trial, but expressly asserted by the defendant. The question presented is not like that of a verdict or judgment wholly unsupported by the pleadings, since the findings assailed are clearly within the issues made by the pleadings and tried before the referee. The defendant having voluntarily submitted the issues to the referee under the order of the court, and invoked a decision thereof favorable to its own contention, should not, after an adverse holding, be heard to question his authority in the premises. The defendant's attitude, as we view it, resembles that of a suitor seeking in a proceeding by petition in error to abandon the theory upon which the cause was prosecuted or defended by him in the court of original jurisdiction,—a practice expressly condemned by this court in *Smith v. Spaulding*, 40 Neb., 339. (See, also, 2 Ency. of Pleading & Practice, 516, and cases cited.) The objection is clearly without merit and was rightly disregarded by the court below.

The next and most important subject of inquiry is whether, by the terms of the contract relied upon, a

lien existed in favor of the defendant company for the amount of its charges thereunder. It is a fundamental rule, distinctly recognized by the authorities hereafter cited, that exclusive possession by the claimant, whether a factor, a broker, or warehouseman, is essential to the existence or continuance of a lien thereon, and that a lien does not, at common law, exist in favor of one who holds property in subordination to the will or control of another. It is also true that no lien attaches if inconsistent with the terms, express or implied, of the contract under which possession was obtained.

We will now, with these elementary principles in view, proceed to an examination of some of the salient features of the contract. It will be observed, first, that the defendant company thereby undertakes to receive all of the goods consigned to it by the plaintiff, to store the same in its warehouse, and "to reship any said goods, or parts of the same," on the order of the plaintiff or its agents; second, the defendant is required to make a statement of the account at any time on request of the plaintiff, and remit any balance due the latter; third, the plaintiff is required at any time to remit any balance due the defendant upon receipt of statement, the latter reserving the right to make sight drafts at any time, accompanied by a statement, for any balance due for freight, storage, or transfer charges. These conditions we interpret as reserving to the plaintiff the right, at pleasure, to sell and deliver the goods consigned to the defendant, and as imposing upon defendant the corresponding duty to yield possession thereof upon the plaintiff's order, relying upon the personal credit of the latter for the amount of its charge—a relation irreconcilably in conflict with the construction now contended for. We do not question the proposition that a general lien may exist at common law, or by custom, in favor of a factor, warehouseman, or other bailee for a balance due on account, although, as remarked by Chancellor Kent, such liens are not favorites of the law. (2 Kent, Commentaries, 634-637.) That sub-

ject is, however, not presented by this record, for the reason, as we have seen, that the turning point of the controversy is the construction to be given the contract of bailment here involved.

Our further examination will accordingly be confined to the authorities tending to elucidate the particular question involved, and which, as will be observed, are in harmony with the views above expressed. In *Trust v. Pirsson*, 1 Hilt. [N. Y.], 292, one party was by agreement authorized to store pianos in the warehouse of the other, with the privilege of repairing and selling at pleasure the property thus stored, for the consideration of $25 per month, payable at the end of each month, which agreement was held a waiver of a lien for the bailee's charges thereunder. "The distinction," said Daly, J., "that there can be no lien where the day or time of payment is regulated and fixed by the parties is as old as the Year Books, and it is manifest that the law could not be otherwise. The right to detain all the property to which the lien attaches until the charge upon it is paid is incident to the right of lien. When, then, did the lien in this case attach? Certainly not when the possession commenced, for no payment was to be made until a month after. During that time Pirsson had a right, under the agreement, to sell any of his pianos that might be there, and, of course, to deliver them to the buyers. * * * The contract, therefore, went into operation with a recognition of rights on the part of Pirsson wholly inconsistent with a reservation of a right of lien." In *Dunham v. Pettee*, 1 Daly [N. Y.], 112, it was held, after a careful review of the authorities, that where, by the custom of warehousemen, goods are delivered by the latter without immediate payment of storage charges, in reliance upon the personal credit of the owner, there is no lien, such a course of dealing being inconsistent with the theory of an implied understanding, at the time of the deposit, that the goods so deposited may be retained as security for their storage. In *Fieldings v. Mills*, 2 Bosw. [N. Y.], 489,

60

882 NEBRASKA REPORTS. [VOL. 49

Moline, Milburn & Stoddard Co. v. Wood Mowing & Reaping Machine Co.

it was held that a mechanic who, in the course of his business, makes repairs upon an agreement to give credit for a stipulated time thereby waives his lien upon the property so repaired. In *Stoddard Woolen Manufactory v. Huntley*, 8 N. H., 441, an agreement by a clothier to dress flannel furnished by the other party, for a year, and to receive pay therefor quarterly, was held not to create a lien in favor of the former upon cloth remaining in his hands at the end of the quarter. *Wiles Laundering Co. v. Hahlo*, 105 N. Y., 234, arose out of a state of facts substantially similar to the case last cited. It was held that when a time of payment is fixed by contract which is, or may be, subsequent to the time when the owner is entitled to a return of the property, there can be no lien. The court, by Rapallo, J., in the course of the opinion, say: "The same principle is applicable to liens of warehousemen, carriers, and other bailees. If, by the terms of the contract, possession of the property is to be surrendered before payment, no right of lien exists." In *McMaster v. Merrick*, 41 Mich., 505, a sawmill was leased without rent, the lessee being required to saw all logs furnished by the lessor, and to season and ship the lumber manufactured therefrom, during the continuance of the lease. It was held that the contract was inconsistent with the theory of a lien by the lessee upon the lumber manufactured by him, since, among other reasons assigned, the obligation to ship was without limitation and applied to the entire product of the logs furnished by the lessor. In *Cowell v. Simpson*, 16 Ves. [Eng.], 275, it was asserted by Lord Eldon as the doctrine of previous cases that the lien of a factor is lost by reason of a special contract for a particular mode of payment of his charges. Like views are also expressed in the following cases: *Chandler v. Belden*, 18 Johns. [N. Y.], 157; *Raitt v. Mitchell*, 4 Campb. [Eng.], 146; *Crawshay v. Homfray*, 4 B. & Ald. [Eng.], 50; *Chase v. Westmore*, 5 Maule & Sel. [Eng.], 180. See, also, 1 Jones, Liens, sec. 1002 *et seq.;* Mechem, Agency, secs. 676, 680; Edwards, Bailments [3d ed.], sec. 432.

To pursue the subject by a review of the cases to which we are referred by the defendant company would result in the unnecessary prolonging of this opinion, without corresponding profit to any one concerned. It is sufficient that they do not, in our judgment, support the claim of a lien by virtue of the contract upon which the defendant relies, while in some of them the principle which controlled the cases above cited is distinctly recognized. We do not doubt, from a consideration of the subject in the light of authority, that the stipulation authorizing a removal of the property at the pleasure of the plaintiff, and the defendant's evident reliance upon the personal credit of the plaintiff, is a waiver of the right which the latter might otherwise have asserted to a lien upon such property for the amount of its charges. It follows that since the defendant's sole reliance is its alleged lien by reason of the facts stated, the plaintiff was entitled to the possession of the property in controversy when the action was commenced, and that the judgment of the district court must be

AFFIRMED.