## NELSON MORRIS, APPELLEE, v. ANDREW HAAS, APPELLANT.

### FILED APRIL 8, 1898.   No. 7684.

1. **Consent to Reference: ESTOPPEL: APPEAL.** A defendant to an action in which an accounting is prayed, who consents to an order of reference and proceeds according to the analogies of a suit in equity, cannot on appeal be heard to say that the action was essentially of a legal character, and should have been so treated.

2. **Accounting: COUNTER-CLAIM: PLEADING: ESTOPPEL.** One who, by his answer to a petition for an accounting, joins issue on the facts, pleads a counter-claim, and himself prays an accounting of all the transactions cannot be afterwards heard to allege that the petition did not contain averments sufficient to entitle the plaintiff to demand an accounting.

3. **Consent to Reference: PARTICIPATION IN TRIAL: ESTOPPEL.** One who consents to an order of reference directing the referee to report his "conclusions" and then proceeds before the referee, after the expiration of the time limited in the order, participating in the production of evidence and asking the referee to pass upon questions of law and fact, and who, after the evidence has been taken, stipulates for an extension of time for the referee to file his "decision," cannot, after the filing of an adverse report, be heard to say that the referee did not proceed within the time first fixed, or that he was not authorized to find the facts.

4. **Partnership: ACCOUNTING: EVIDENCE.** Books of account, kept by one partner and showing his transactions with the other, to which accounts the other had access and which he from time to time examined, and which, after the business ceased, he admitted to be correct, are admissible in evidence on an accounting between them.

5. **Accounting: EVIDENCE.** The evidence on certain issues of fact examined, and certain findings set aside because not sustained thereby.

APPEAL from the district court of Douglas county. Heard below before FERGUSON, J. *Modified.*

*Bartlett, Baldrige, & De Bord,* for appellant.

*Wharton & Baird, contra.*

IRVINE, C.

The petition in this case alleges two partnership contracts between the plaintiff and the defendant, the one made in 1883 having for its object the purchase and operation of a cattle ranch in Colorado and Utah, usually called by witnesses the "Two-Bar Ranch," the other made in 1887 for the operation of a feeding ranch at Herman, in this state. The petition charges that in each instance the money for the purchase and operation of the ranch was furnished by plaintiff under an agreement that he was to receive interest thereon; that defendant was to devote his time, skill, and attention to the conduct of the business; and that profits or losses were to be shared or borne equally. It then charges that large losses were incurred; and further, that Haas had failed to account for a portion of certain large advances that Morris had made to him for use in the joint undertakings. Amounts are in all cases alleged with certainty, and the prayer is for an accounting of the various transactions, and for judgment for $85,485.15, with interest. April 4, 1892, an answer was filed admitting the partnerships essentially as charged, but traversing some details of the contracts alleged, and pleading that profits had accrued for which plaintiff refused to account. The answer closed with a prayer for an accounting. April 15, 1892, an order was made by consent of parties, referring the case to Edgar H. Scott, Esq., "to take the testimony in this case, and said referee is hereby authorized and directed to take the testimony in this cause and report the same to the court, together with his conclusions, * * * within 90 days from the date hereof." It would seem that nothing was done under this order until October, when the referee took the oath. It does not appear that any orders were made extending the time for the referee to act, but from time to time stipulations were entered into for the further taking of testimony and the extension of time to report. The taking of testimony was begun October 4, 1892, and

continued at intervals until March, 1894.   Pending the taking of testimony, and January 15, 1894, an amended answer was filed substantially changing the issues.   This amended answer admitted that there had been an agreement for a partnership in the Two-Bar Ranch, but alleged facts amounting to an exclusion of the defendant therefrom on June 10, 1884.   With regard to the Herman ranch, it denied the partnership and alleged that defendant purchased that ranch for the plaintiff and was to have a one-third interest therein for his services.   By way of counter-claim four other transactions or business ventures were alleged, which will later be noticed.   The amended answer also prayed for an accounting.

The referee reported June 13, 1894, finding nearly all the issues in favor of the plaintiff, and finding due him $63,212.09.   Numerous exceptions were taken and a motion was made to set aside the report.   This motion was overruled and judgment entered on the referee's findings.

The defendant asserts that the proceedings, from the facts alleged, should be in the nature of an action at law, and not in equity.   If this were true, so far as the district court was concerned it would only go to the method of trial, and the defendant, by consenting to the reference, waived the objection.   (*Sherwin v. Gaghagen*, 39 Neb. 238.) So far as the question could be raised here it would only affect the defendant's right to have the case reviewed in the manner he has brought it here, by appeal.

It is urged that the petition does not contain the necessary allegations to entitle the plaintiff, as a partner, to an accounting, in that it neither pleads a past dissolution nor prays for a present one.   But it appears—if not by the petition, certainly by the answer—that whatever business connections had existed between the parties were severed before suit brought.   Moreover, in both answers the defendant himself prayed for an accounting. He went on before the referee for about two years taking the account, and by counter-claim he injected into the accounting matters not embraced within the original pe-

tition. He cannot now be heard to say that the court should not have allowed the accounting both parties asked.

The report of the referee is assailed on the ground that he acted after his authority had expired by limitation of time, and beyond his original powers. On the latter point the argument is that he had power only to take and report testimony, and not to find the facts. The order of reference, directing the referee to take the testimony and report the same with his "conclusions," lacks certainty. Under our practice it is customary to speak of findings of fact and conclusions of law; but necessarily such conclusions can only be reached after the facts have been found. It would seem, therefore, that "conclusions" in the order was not used in its narrower and more technical sense, but included the finding of the facts as well as the ascertainment of the law applicable thereto. Both parties evidently so understood the order. During the taking of testimony the defendant asked of the referee leave to file an amended answer. Probably the referee would not in any case have power to so reform the pleadings, but the application shows that the defendant construed the order of reference as conferring wide judicial authority and not as merely constituting the referee an examiner to take the proofs. At the close of the plaintiff's case the defendant asked the referee to dismiss the case because the proof was insufficient. This certainly showed that he considered the referee authorized to pass upon the evidence. May 11, 1894, counsel for defendant signed a stipulation to extend the time for the referee "to make up and file his report and decision." It is very clear that until the defendant was confronted with an adverse report he never sought to question the referee's authority, and now, after submitting to the proceeding and taking part therein for about two years, and after the taking of thousands of pages of proof, he cannot be heard to question it. (*Moline, Milburn & Stoddard Co. v. Wood Mowing & Reaping Machine Co.*, 49 Neb. 869.)

The findings of the referee are vigorously assailed as not sustained by the evidence. The argument is largely directed to the credibility of the plaintiff and his witnesses—a question for the trier of fact in the district court, and by him determined. So far as the issues concern the nature of the contracts with reference to the ranches, there can be no doubt that the findings receive substantial support in the evidence. Much argument is addressed to the proposition that the contracts, in any view of the evidence, lacked certain essentials of a partnership, especially mutual agency and authority. There is no question involved of the improper exercise of such powers, the critical issue is merely whether there was an agreement that Haas was to share the liability for losses. That point established, and the evidence certainly tends to establish it, it makes no difference whether or not we are to designate the arrangement by the name of partnership.

The sufficiency of the evidence to establish the amounts found by the referee depends largely on the admissibility of certain accounts in evidence. These were from the private books of Morris, kept by his book-keepers in Chicago, and were not, in any proper sense, partnership accounts. They were rather the personal accounts of Morris with his partner. Moreover, we are inclined to concur with the defendant in the conclusion that they were not shown to be admissible under the statute as private entries on behalf of the person making them. We have, however, the testimony of several witnesses that these accounts were made up in part from statements sent by Haas to Morris, and that statements in the form of transcripts from these books were from time to time sent by Morris to Haas. Further, that during the whole period to which the proof relates, Haas was several times each year in Chicago and had access to these accounts, and did from time to time examine them and at times suggested corrections, which were made after investigation of the facts. Finally, after the joint transactions had been terminated,

Haas examined the books and pronounced them correct. They were thus admissible in much the same way as a statement of account, received and retained without objection, and also as an affirmative admission of one of the parties.

We must be excused from a detailed review of the enormous volume of evidence before us. It has been examined, and, except in the particulars now to be noticed, has been found to sustain the findings.

When we reach the referee's treatment of the counterclaims we encounter more difficulty. The defendant alleged that under instructions from Morris he superintended the construction and operation of an establishment at South Omaha known as the Union Rendering Works; that a corporation was formed, to which the works were transferred, and that Morris, who controlled the stock, agreed that Haas should have one-fourth of the stock for his services. It was also averred that this stock had been in fact delivered, but that by fraudulent means Morris had repossessed himself thereof and had refused to surrender it. The finding on this subject in favor of plaintiff is sustained by proof that the stock in question was issued to Haas only to enable him "to attend the meetings" of the corporation, and that when the certificate was sent him it was with express instructions to indorse it to Morris and send it back to him, which was done. No interest was shown in Haas. The defendant also bought for Morris certain cattle and fed them at the Willow Springs Distillery at Omaha. He claims that he was to have one-third the profit for this service. The finding adverse to him on this subject is sustained, because there is no proof of any profit. Haas testified that he did not know whether there was a profit, but that there was a profit of $10 to $12 a head on other cattle similarly handled that season. Such evidence was incompetent to prove a profit on these cattle.

During a large portion of the time occupied by the amicable business relations of the parties, defendant was

engaged in purchasing cattle on the South Omaha market
and shipping them to Morris in Chicago. He claims he
did so under a contract whereby he was to receive $5 per
car load for his services in that behalf. The referee found
that he was entitled to no compensation. This finding
must have been based on certain testimony by Morris and
his son that Morris owned Haas' time, and that they could
call on him for any service they chose. When this proof
is examined it will be found that it consists merely of
statements of the conclusions or inferences of the wit-
nesses as to the nature of the contracts, and that such
inferences are wholly unwarranted. Mr. Morris may have
thought that when he entered into the partnership con-
tracts with Haas he was acquiring a slave, but he had no
right to think so. Such an inference is repugnant to the
theory of either party—to that of Haas because accord-
ing to him each venture stood on its own footing, there
being no interdependence; to that of Morris because ac-
cording to him the ranch partnerships were joint business
ventures, each party assuming his share of the risk, and
Haas not in any manner becoming Morris' servant. They
were partnerships towards which Morris advanced the
money, and Haas gave the skill and attention necessary
for their conduct. Morris was no more entitled to Haas'
time outside the partnership, to assist Morris in his pri-
vate business, than Haas was entitled to the whole of
Morris' fortune, not embarked in the ranches, to assist
Haas in his own private ventures. Against this arrogant
assertion of human ownership made by Morris we have
the undisputed fact that the services were rendered, and
that at Morris' request, and the strong antecedent improb-
ability that either party contemplated that such services
should be gratuitously performed. We also have uncon-
tradicted proof that the compensation which Haas says
he was to receive was a reasonable compensation, and we
have Haas' detailed account of the conversation leading
to and expressing the contract. As to the amount of this
item the proof is not very definite. Haas says he bought

and shipped for Morris more than 6,000 car loads of cattle. Morris seems to have kept his books in other particulars very carefully, and undoubtedly might have shown the exact figures, and would have done so if Haas had overstated them. We must allow this item according to such proof as we have, that is to the amount of $30,000. Precisely in the same situation stands a claim for $250 for services in purchasing cattle in Kentucky. In this instance there is no dispute as to the value of the services. This item must also be allowed.

The referee calculated interest on all items from September 1, 1890. The judgment is modified by deducting therefrom the sum of $30,250, with interest at seven per cent from the date last mentioned.

JUDGMENT ACCORDINGLY.